IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| BANK OF AMERICA, N.A., | * | |
| Plaintiff, | * | Case No. PX 15-02953 |
| v. | * | |
| | * | |
| JERICHO BAPTIST CHURCH MINISTRIES, INC. et al., | * | |
| Defendants. | * | |

******

## MEMORANDUM OPINION

Pending in this interpleader action is a motion for summary judgment filed by Defendant

Jericho DC against Defendant Jericho MD. ECF No. 68. The issues have been fully briefed and a

hearing was held on Wednesday, August 3, 2016, with supplemental briefing to follow. *See* ECF

No. 83 & 84. For the following reasons, Jericho DC's motion for summary judgment is granted.

## I.    BACKGROUND

Underlying this action is a longstanding dispute over the control and governance of

Jericho Baptist Church Ministries, Inc. ("the Church"), located in Landover, Prince George's

County, Maryland. The Church was incorporated in the District of Columbia in 1962 by

Reverend James R. Peebles, Sr.; his wife, Betty Peebles; and Alice Harvey. ECF No. 68-1 at 6,

61. The dispute spawned much litigation, during which the parties and the courts refer to the

surviving members of the original board as "Jericho DC" to distinguish it from a later-formed

Board that incorporated in Maryland, also under the name "Jericho Baptist Church Ministries,

Inc." ("Jericho MD").[1]

---

[1] The Court will discuss the formation of "Jericho Maryland," or "Jericho MD," *infra*.

From the Church's inception, the Church has been governed by a Board of Trustees. As of March 2009, the Board members were Betty Peebles, William Meadows, Anne Wesley, and Dorothy Williams. ECF No. 68-1 at 7. Additionally, although Jericho DC has steadfastly maintained that Joel Peebles was and is a member of the Board, Jericho MD has vigorously disagreed.

On March 15, 2009, the Jericho DC Board members were summoned to Betty Peebles' office to sign "Resolution 1-09 of Board of Trustees" ("Resolution 1-09"). Resolution 1-09 established the new slate of Jericho MD Board members. At least some of the Jericho DC Board members signed Resolution 1-09, assuming it was routine paperwork and unaware that the purpose of 1-09 was to oust the Jericho DC Board. ECF No. 68-1 at 14–15. The new Board consisted of former trustees Betty Peebles and Dorothy Williams, as well as new trustees Gloria McClam-Magruder, Denise Killen, Clarence Jackson, Jennie Jackson, Bruce Landsdowne, Norma Lewis, and Lashonda Terrell. ECF No. 68-1 at 24–25. Joel Peebles received no notice of Resolution 1-09 prior to its passage, and did not know of its existence until September 2010. ECF No. 68-1 at 7. By implication, Resolution 1-09 removed William Meadows, Anne Wesley, and Joel Peebles from the Board of Trustees. ECF No. 68-1 at 7.

On October 12, 2010, Betty Peebles, the Church's leader, passed away. On November 1, 2010, six individuals, including four of the new purported Board members identified in Resolution 1-09 (Gloria McClam-Magruder, Denise Killen, Clarence Jackson, and Dorothy Williams) incorporated in Maryland as "Jericho Baptist Church Ministries, Inc." The articles of incorporation identified the Jericho MD Board as operators of the Church. ECF No. 68-1 at 40–44. That same day, Jericho MD filed Articles of Merger with the D.C. Department of Consumer and Regulatory Affairs indicating that, pursuant to a vote by the Board of Trustees of Jericho

DC, Jericho DC was merged into Jericho MD. ECF No. 68-1 at 30–31. Jericho MD Board members Gloria McClam-Magruder, Denise Killen, Clarence Jackson, Clifford Boswell, Dorothy Williams, and Lynda Pyles signed on the corporation's behalf. *Id.*[2] Denise Killen and Gloria McClam-Magruder executed the merger on Jericho DC's behalf. *See* ECF No 68-1 at 31, 34. The merger effectively eliminated Jericho DC and made Jericho MD the new governing body of the Church.

Betty Peebles' passing and Jericho MD's takeover generated a vigorous legal feud over control of the Church. Since 2010, the parties in this action, along with several individual Church members, have participated in no fewer than six separate lawsuits in federal and state court attempting to determine fully and finally which entity rightfully governs the Church. *See Jericho Baptist Church Ministries, Inc. v. Peebles*, No. CAL10-33647 (P.G. Cnty. Cir. Ct. Oct. 25, 2011), *rev'd*, No. 2023 (Md. Ct. Spec. App. Sept. 19, 2012); *Jericho Baptist Church Ministries, Inc. v. Gloria McClam-Magruder*, No. CAL11-00873 (P.G. Cnty. Cir. Ct. Oct. 25, 2011), *rev'd*, No. 1953 (Md. Ct. Spec. App. Sept. 19, 2012); *Chavez v. Jericho Baptist Church Ministries, Inc.*, No. CAL12-13537 (P.G. Cnty. Cir. Ct. Feb. 18, 2014); *George v. Jackson*, No. 2013 CA 007115 B (Sup. Ct. D.C. July 7, 2015) [hereinafter *George v. Jackson*]; *Franklin v. Jackson*, No. DKC 14-0497, 2015 WL 1186599 (D. Md. Mar. 3, 2015); *Jericho Baptist Church Ministries, Inc. v. Jericho Baptist Church Ministries, Inc.*, No. APM 16-647 (D.D.C. filed Apr. 6, 2016); *Bank of America, N.A. v. Jericho Baptist Church Ministries, Inc.*, No. PX 15-02953 (D. Md. filed Sept. 29, 2015); *Citibank, N.A. v. Jericho Baptist Church Ministries, Inc.*, No. PX 15-02953 (D. Md. filed May 27, 2016).

---

[2] Ms. Pyles's first name is spelled "Lynda" and "Linda" in the corporate documents.

### A.    The *George v. Jackson* Case

Of the lawsuits mentioned above, *George v. Jackson* is the only case that has been tried to final verdict in which the Court squarely decided which Board controls the Church. In that case, individual Jericho DC church members, whose membership had been terminated by the new Jericho MD Board, filed suit in the Superior Court for the District of Columbia against Jericho MD and its board members. *George v. Jackson* at 3, ECF No. 68-1 at 8. The plaintiffs sought a declaration that Jericho MD was not the valid Church Board as well as injunctive relief designed to strip Jericho MD of its power to govern the Church.

After a three-day bench trial, Judge Stuart G. Nash ruled in favor of Jericho DC. Judge Nash pronounced Joel Peebles as a valid member of the Jericho DC Board of Trustees at the time Resolution 1-09 was executed. Consequently the Court found that removal of the Jericho DC Board members was illegal under the District of Columbia Nonprofit Corporation Act ("DCNCA"). ECF No. 68-1 at 12.[3] This was because Joel Peebles' inclusion as a Board member meant that Resolution 1-09 was passed without notice to one of the Board members, in violation of the DCNCA. Additionally, because Joel Peebles received no notice of the meeting to vote on Resolution 1-09, all actions taken by the Board at that meeting must be deemed invalid under the DCNCA. *In re Se. Neighborhood House*, 93 B.R. 303, 305 (Bankr. D.D.C. 1988). Consequently, because Resolution 1-09 was invalid, Jericho MD had no legal authority to act as the governing Board. The Superior Court thus declared that the surviving members of the Jericho DC Board— William Meadows, Dorothy Williams, and Joel Peebles—was and is the valid Board of Trustees, and ordered Jericho MD to cease exercising any ownership or control over any Church corporate assets. ECF No. 68-1 at 18. The case is currently on appeal.

---

[3] Jericho DC's corporate bylaws are apparently silent on the issue of the appointment and removal of trustees. Accordingly, the process is governed by the terms of the DCNCA. *See* ECF No. 68-1 at 11.

## B. Procedural History in the Interpleader Action

On September 29, 2015, Plaintiff Bank of America, N.A. ("BOA") filed a Complaint for Interpleader against Jericho MD, Jericho DC, and their respective board members. ECF No. 1. The Complaint, brought pursuant to 28 U.S.C. § 1335, seeks an order determining which entity— Jericho DC or Jericho MD—owns and controls the assets held in four BOA corporate deposit accounts that had been established before the execution of Resolution 1-09. The frozen accounts collectively are worth $7,755,199. ECF No. 1 at 2.

On December 10, 2015 Jericho DC filed a counterclaim against Bank of America (ECF No. 19) and on February 19, 2016 it filed an amended counterclaim (ECF No. 48) asserting various causes of action related to Bank of America's handling of the deposit accounts in question, including breach of contract, negligence, and gross negligence. Bank of America moved to dismiss the counterclaims under Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 56. On May 12, 2016, Jericho DC filed a motion for summary judgment on the question of which Board possesses current control and ownership of the assets in accounts deposited with the Bank of America. ECF No. 68. This Memorandum Opinion and Order addresses  solely Jericho DC's motion for summary judgment and for the following reasons, Jericho DC's motion for summary judgment is granted.

## II. STANDARD OF REVIEW

A court may enter summary judgment only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). However, summary judgment is inappropriate if any material fact at issue "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

250 (1986); *JKC Holding Co. LLC v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)). "A mere scintilla of proof . . . will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249–50 (citations omitted). At the same time, the court must construe the facts presented in the light most favorable to the party opposing the motion. *See Scott v. Harris*, 550 U.S. 372, 378 (2007); *Emmett*, 532 F.3d at 297.

## III.    ANALYSIS

Interpleader actions involve a two-step process. *Rapid Settlements, Ltd. v. U.S. Fid. & Guar. Co.*, 672 F. Supp. 2d 714, 717 (D. Md. 2009). First, the court decides whether the interpleader plaintiff is entitled to bring the action. *CMFG Life Ins. Co. v. Schell*, No. GJH-13-3032, 2014 WL 7365802, at *4 (D. Md. Dec. 22, 2014) (citation and internal quotation marks omitted). Second, the court settles the competing claimant's rights to the fund. *Id.*

Statutory interpleader under 28 U.S.C. § 1335 provides district courts with original jurisdiction over any interpleader action where there are two or more adverse claimants of diverse citizenship, and the plaintiff has deposited with the court the funds in controversy, which equal or exceed the required statutory minimum of $500. BOA satisfies these requirements. The deposit accounts in question collectively have assets of approximately $7,755,199 and Jericho

DC and Jericho MD are claimants of diverse citizenship whose claims are adverse and independent of one another.

This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because BOA is a citizen of a state that is different from each of the defendants, and the amount in controversy exceeds $75,000. BOA has already deposited the contested funds with the Court Registry and is properly before this Court requesting resolution as to entitlement of the funds. ECF No. 50. But when a defendant brings a counterclaim against the interpleader, the interpleader plaintiff may be kept in the litigation to defend against the counterclaim, rather than being dismissed from the litigation after depositing the disputed funds with the court. *See Prudential Life Ins. v. Hovis*, 553 F.3d 258, 262 (3d Cir. 2007).[4]

Having determined that this case is proper for resolution under § 1335, the Court can determine the respective rights of the claimants to the funds at stake. *NYLife Distrib., Inc. v. Adherence Group, Inc.*, 72 F.3d 371, 375 (3d Cir. 1995). Where no genuine issue of disputed material fact exists, the Court may determine respective rights by summary judgment. *Rhoades v. Casey*, 196 F.3d 592, 600 (5th Cir. 1999).

Here, the Court has been tasked with determining whether Jericho MD or Jericho DC controls the BOA accounts. More fundamentally, the question of which Board lawfully controls the Church in its entirety will necessarily dictate which Board controls the Church's purse strings. The predicate question of church control has already been squarely decided in Jericho DC's favor in *George v. Jackson*. Thus, should this Court apply the doctrine of collateral

---

[4] This Memorandum Opinion and Order does not address BOA's motion to dismiss Jericho DC's amended counterclaim. ECF No. 56. The Court will retain jurisdiction over BOA and Jericho DC for purposes of adjudicating the counterclaims and BOA's motion. *See William Penn Life Ins. Co. of New York v. Viscuso*, 569 F. Supp. 2d 355, 361 (S.D.N.Y. 2008).

estoppel to grant preclusive effect to the *George v. Jackson* declaration, the court must likewise find in favor of Jericho DC.

Collateral estoppel, or issue preclusion, "prohibits 'the relitigation of factual or legal issues decided in a previous proceeding and essential to the prior judgment.'" *Elwell v. Elwell*, 947 A.2d 1136, 1140 (D.C. 2008) (quoting *Borger Mgmt., Inc. v. Sindram*, 886 A.2d 52, 59 (D.C. 2005)). The purpose of the doctrine is "to avoid the expense and vexation of multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibilities of inconsistent decisions." *Rourke v. Amchem Products, Inc.*, 384 Md. 329, 359 (2004) (quoting *Murray Int'l Freight Corp. v. Graham*, 315 Md. 543, 547 (1989)). "Courts apply the preclusion law of the court in which the first proceeding was brought, and when this is a state court, the state's law of preclusion applies." *Jahr v. D.C.*, 968 F. Supp. 2d 186, 191 (D.D.C. 2013); *accord Sartin v. Macik*, 535 F.3d 284, 287 (4th Cir. 2008) ("Federal court must give the same preclusive effect to a state court judgment as the forum that rendered the judgment would have given it."). Thus, the laws of the District of Columbia govern whether this Court will grant preclusive effect to *George v. Jackson*.

Under D.C. law, collateral estoppel may be applied where the issue in question has been (1) actually litigated and (2) determined by a valid, final judgment on the merits; (3) after a full and fair opportunity for litigation by the parties or their privies; (4) under circumstances where the determination was essential to the judgment, and not merely dictum. *Davis v. Davis*, 663 A.2d 499, 501 (D.C. 1995) (citations omitted). "Offensive use of collateral estoppel occurs when a plaintiff seeks to foreclose a defendant from relitigating an issue the defendant has previously litigated unsuccessfully in another action against the same or a different party." *Modiri v. 1342 Rest. Grp., Inc.*, 904 A.2d 391, 394 (D.C. 2006) (quoting *United States v. Mendoza*, 464 U.S.

154, 159 n.4 (1984)). "When one who was not a party to the original suit invokes collateral estoppel to prevent re-litigation of an issue by a party to the original suit or his privy, application of the doctrine is called "non-mutual." *Id.* at 394 (citing *Blonder–Tongue Labs., Inc. v. University of Ill. Found.*, 402 U.S. 313, 349–50 (1971) (overruling a prior decision requiring mutuality of parties in order to apply doctrines of res judicata and collateral estoppel)).

Here, Jericho MD unsuccessfully litigated the issue of Board control in *George v. Jackson*. And while Jericho DC's interests were aligned with the plaintiffs in *George v. Jackson*, Jericho DC was, strictly speaking, not party to that action.[5] Thus, *George v. Jackson* will only have preclusive effect if the test for non-mutual offensive collateral estoppel has been met. *See Modiri*, 904 A.2d at 394. (endorsing application of non-mutual offensive collateral estoppel).

"Proper application of non-mutual offensive collateral estoppel requires a two-step inquiry." *Modiri*, 904 A.2d at 395. First, this court must determine whether the previous action satisfies the above-articulated requirements for invoking collateral estoppel. If these requirements have been met, the Court next considers whether invoking collateral estoppel against the defendant is fair and equitable. *See Newell v. District of Columbia*, 741 A.2d 28, 36 (D.C. 1999) (the court must proceed "with some caution"). *See Parklane Hosiery*, 439 U.S. 322, 329–31 (citing as examples of potential unfairness cases where plaintiffs adopt a piecemeal litigation strategy, cases where a defendant has little incentive to defend the first action, situations where there are inconsistent judgments, and situations where the defendant has procedural protections available in the second case that were not available in the original action). The Court will thus address each step in turn.

---

[5] The Court notes that one of the interpleader defendants here, Jericho DC's Robert George, was a plaintiff in *George v. Jackson*. The Court also notes that Jericho DC unsuccessfully attempted to intervene in *George v. Jackson*. *See* ECF No. 72-2 at 127–30.

### A.    Whether Collateral Estoppel Applies

A threshold matter in cases where collateral estoppel may apply is whether the issues are

identical. *Short v. D.C. Dep't of Employment Servs.*, 723 A.2d 845, 849–50 (D.C. 1998). Here,

both lawsuits center on which Board controls the Church. Moreover, control over the Church

remained as crucial to the outcome of the D.C. case as it is here, which was precisely recognized

by the D.C. court in denying Jericho DC's motion to intervene in the case. ECF No. 72-2 at 128

("[i]n resolving the plaintiffs' individual claims, it was, of course, necessary for the Court to

determine who constituted the valid Board of Trustees for the Church").  In fact, the D.C. Court

noted that it "ha[d] no reason to doubt that its decision on this matter will be honored, under the

Full Faith and Credit clause, by the courts of Maryland and elsewhere in the United States, and

that the decision will be granted such preclusive effect as appropriate under the law." *Id.*

Contrary to Jericho MD's position, ECF No. 83 at 2, simply because the parties

presented different arguments and highlighted different evidentiary facts in the earlier case does

not alter its preclusive effect here. *See* Restatement (Second) of Judgments § 27 (1982) ("[I]f the

party against whom preclusion is sought did in fact litigate an issue of ultimate fact and suffered

an adverse determination, new evidentiary facts may not be brought forward to obtain a different

determination of that ultimate fact . . . . And similarly if the issue was one of law, new arguments

may not be presented to obtain a different determination of that issue."); *Yamaha Corp. of Am. v.

United States*, 961 F.2d 245, 258–59 (D.C. Cir. 1992) ("If a new legal theory or factual assertion

put forward in the second action is related to the subject-matter and relevant to the issues that

were litigated and adjudicated previously, so that it *could* have been raised, the judgment is

conclusive on it despite the fact that it was not in fact expressly pleaded or otherwise urged.")
(citation omitted) (emphasis in original). The issues are identical and thus the Court can proceed
to applying the four requirements for collateral estoppel.

       *i.*     *Actually Litigated*

      The first factor, whether an issue is "actually litigated," cuts in favor of issue preclusion.
Under D.C. law, actual litigation requires that the issue was "properly raised, by the pleadings or
otherwise, and is submitted for determination, and is determined," *Ali Baba Co. v. WILCO, Inc.*,
482 A.2d 418, 422 (D.C. 1984) (citing Restatement (Second) of Judgments § 27(d) (1982)). The
Court reviews first the pleadings to ascertain if the issue was raised, then the evidence adduced at
trial, and finally the order issued by the court in the prior case. *See Henderson v. Snider Bros.*,
409 A.2d 1083, 1088 (D.C. 1979); Restatement (Second) of Judgments § 27 (1982).

      In *George v. Jackson*, the question of which Board controls the Church had been clearly
presented throughout. Plaintiffs properly raised in their complaint the question of Board control,
seeking, *inter alia*, an Order declaring that the surviving trustees of Jericho DC constitute the
Board. Complaint at 20, *George v. Jackson*. Likewise, the stated purpose of the action was "to
obtain a declaratory judgment that Defendants are not the valid Board of Trustees of the
Church." *Id.* at 4.

      The defendants in *George v. Jackson*, which included Jericho MD as a separate entity and
its trustees individually, vigorously defended that it controls the Church. Jericho MD filed
motions to dismiss and motions for summary judgment. ECF No. 72-2 at 68–94. And Jericho
MD Board members Gloria McClam-Magruder, William Meadows, and Dorothy Williams
testified on behalf of the defense.

At trial, the issue of Board control turned on whether Resolution 1-09 was invalid because Joel Peebles was effectively cut out of its execution. In making its determination, the Superior Court considered, and subsequently discredited, the testimony of Dorothy Williams regarding Joel Peebles' Board status. ECF No. 68-1 at 9–10. Consequently, the Court found that "the actions of the successor Board of Trustees, whose authority was entirely premised on Resolution 1-09, are likewise invalid." *See* ECF No. 68-1 at 17, and thus Jericho DC maintains control of the Church. *See* ECF No. 68-1 at 18 ("[T]he Court hereby **ORDERS** that defendants refrain from exercising ownership or control over any corporate assets of Jericho Maryland formerly belonging to, or derived from, the corporate assets of Jericho DC . . . .") (emphasis in original). The Court further declared, "the current Board of Trustees for Jericho DC shall consist of the surviving members of the Board of Trustees that existed prior to the invalidated Resolution 1-09, those members being: William A. Meadows; Dorothy L. Williams, and Joel R. Peebles." ECF No. 72-2 at 18. Who controls the Church was indeed "actually litigated" in *George v. Jackson*. Jericho MD cannot re-litigate it here.

ii.    *Valid, Final Judgment on the Merits*

The second factor in determining whether a prior judgment has preclusive effect focuses on whether the issue in question was determined previously by "a valid, final judgment on the merits." *Davis v. Davis*, 663 A.2d 499, 501 (D.C. 1995). This requirement is easily met here. When the D.C. Superior Court rendered its decision in *George v. Jackson*, it was final for the purposes of issue preclusion. This is so even though the judgment is still on appeal. *See Murray v. Goodwin*, 852 A.2d 957, 959 (D.C. 2004) (citing cases).

iii.    *Full and Fair Opportunity for Litigation by the Parties or their Privies*

As to the third factor, all parties were given a full and fair opportunity to litigate which Board controls the Church. Jericho MD argues not so because one of the Jericho MD defendants in this action, Lynda Pyles, was not a party in *George v. Jackson*. ECF No. 83 at 3. Jericho Maryland reads this factor too narrowly. "Parties" is defined as the actual parties "*or their privies*." *Davis*, 663 A.2d at 501. *Accord Howard Univ. v. Lacy*, 828 A.2d 733, 736 (D.C. 2003); *Newell*, 741 A.2d at 36; *Smith v. Jenkins*, 562 A.2d 610, 617 (D.C. 1989). "A privy is one so identified in interest with a party to the former litigation that he or she represents precisely the same legal right in respect to the subject matter of the case." *Smith*, 562 A.2d at 615. The "orthodox categories" of privies are "'those who control an action although not parties to it . . . ; those whose interests are represented by a party to the action . . . ; [and] successors in interest." *Id.* (quoting *Lawlor v. National Screen Serv.*, 349 U.S. 322, 329 n.19 (1955)).

Ms. Pyles has been one of Jericho MD's trustees since its incorporation in 2010. *See* Jericho MD Articles of Incorporation, ECF No. 68-1 at 43. Further, Ms. Pyles signed the Articles of Merger purporting to merge Jericho DC with Jericho MD in 2010. Consequently, Ms. Pyles, an active Board member who played a critical role in the merger, was adequately represented by Jericho MD and fellow Board members in *George v. Jackson*. ECF No. 68-1 at 31. *See Smith v. Jenkins*, 562 A.2d 610, 616 (D.C. 1989) (finding a party to be in privity with the parties in a previous action because he was a business partner with individuals defending in the previous action). If the defendants in *George v. Jackson* were successful, Ms. Pyles would have benefited as one of the Jericho MD board members. *See Modiri v. 1342 Rest. Grp., Inc.*, 904 A.2d 391, 397 (D.C. 2006). That Ms. Pyles' interests remain aligned with the *George v. Jackson* defendants is further underscored by the fact that she is represented by the same lawyer that represented the defendants in the previous litigation. *See id.* (finding that sharing the same lawyer drove home

the fact that the parties' interests were aligned). Thus, all of the defendants in this interpleader action had a full and fair opportunity to litigate the control issue before the D.C. Superior Court.[6]

       *iv.*     *Determination was Essential to the Judgment, and Not Merely Dictum*

The final factor—whether the issue of Board control was essential to the prior preceding—also counsels in favor of granting preclusive effect to the *George* determination of Board control. *Short v. Dist. of Columbia Dep't of Employment Servs.*, 723 A.2d 845, 849 (D.C. 1998). This factor turns on whether the issue was "actually recognized by the parties as important and by the trier as necessary to the first judgment." *Synanon Church v. United States*, 820 F.2d 421, 427 (D.C. Cir. 1987) (internal citation omitted). *See also Jahr v. D.C.*, 968 F. Supp. 2d 186, 195 (D.D.C. 2013) (applying D.C. law). Here, the issue of Church control was not only essential to the Superior Court's decision, it was a part of its findings of fact, conclusions of law, and ultimate grounds for declaratory relief. *See* ECF No. 68-1 at 18 ("[T]he Court hereby **ORDERS** that defendants refrain from exercising ownership or control over any corporate assets of Jericho Maryland formerly belonging to, or derived from, the corporate assets of Jericho DC . . . .") (emphasis in original). Thus this factor too weighs in favor of preclusion.

      **B.**      **Fairness of Applying Non-mutual Offensive Collateral Estoppel**

Based on the above analysis, issue preclusion is warranted. Now, the Court must determine if it should decline to apply issue preclusion in fairness to the defense. When assessing fairness to the defendant, the Court considers:

> (1) [w]hether the first suit was for a trivial amount while the second was for a large amount; (2) whether the party asserting the estoppel could have effected joinder between himself and his present adversary, but did not do so; (3) whether the estoppel is

---

[6] Of course, Bank of America was also not a party to the state case; however, as the disinterested stakeholder, it does not claim an interest in the funds. *See* 28 U.S.C. § 2361. Therefore, its presence in the litigation does not change matters.

based on one of conflicting judgments, another of which is in defendant's favor; (4) whether there are significantly different procedural advantages available to the defendant in the second suit which could affect the outcome.

*Ali Baba Co. v. WILCO, Inc.*, 482 A.2d 418, 423 (D.C. 1984) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979).

The first factor is not an obstacle here. While the *George v. Jackson* lawsuit and the present case differ in kind, it is a distinction without a difference. In the former declaratory judgment action, total control of the Church hung in the balance, and provided the greatest incentive to Jericho MD to fully litigate its case. *See Ali Baba Co. v. WILCO, Inc.*, 482 A.2d 418, 423 (D.C. 1984) (determining that that the defendant had a powerful incentive to litigate even though the lawsuits were for different remedies). The current interpleader action, by comparison, represents one discrete, albeit significant, aspect of control that Jericho MD has already vigorously fought to maintain in the *George v. Jackson* trial. *See* ECF No. 72-2 at 108.

Similarly, the second factor – whether Jericho DC's failure to join in prior action reflects its gamesmanship that is unfairly adverse to Jericho MD – is not implicated. Notably, Jericho DC attempted to join the prior litigation through an emergency motion to intervene in *George v. Jackson* which was denied. *See* ECF No. 72-2 at 127–30. And Jericho DC did not bring the instant interpleader action, BOA did. Thus, Jericho DC cannot fairly be accused of manipulating the current case to take advantage of the prior favorable ruling. In this way, Jericho DC's actions belie any notion that it "wished to avail [itself] of the benefits of a favorable outcome without incurring the risk of an unfavorable one." Restatement (Second) of Judgments § 29 cmt. e (1982).

The third factor, the existence of conflicting judgments, cuts in Jericho DC's favor. Although many lawsuits were filed, only one—*George v. Jackson*—squarely addressed the

corporate governance issue in a final judgment. Judge Nash recognized this in *George v. Jackson,* noting, "[t]his Court's decision is not in conflict with any decision of the Maryland courts related to this matter . . . . [T]he Maryland Court of Special Appeals specifically left open the issues, addressed herein, as to the propriety of Resolution 1-09 under the DCNCA, and the make-up of the Jericho DC Board of Trustees." *George v. Jackson*, at 11 n.9.

To be sure, the parties litigated control of the Church in other cases. But each either avoided the issue of Board control or was not tried to final judgment. For example, on October 18, 2010, Jericho MD brought an action against members of Jericho DC in the Circuit Court for Prince George's County, challenging the attempted takeover of the Church by Jericho DC through the execution of a "Corporate Resolution" purporting to elect Joel Peebles as the "Chief Executive" of Jericho Baptist Church due to Betty Peebles's declining health. *See Jericho Baptist Church Ministries, Inc. v. Peebles*, No. CAL10-33647 (P.G. Cnty. Cir. Ct. Oct. 25, 2011). According to the complaint, Joel Peebles was never a Board member and William Meadows gave up his Board membership by signing Resolution 1-09. ECF No. 72-2 at 5–6.

On January 13, 2011, Jericho DC members filed an answer to the complaint in *Peebles*, denying all allegations. *Id.* On the same day, Jericho DC filed a separate counterclaim and third-party complaint with the Prince George's County Circuit Court, alleging that it was the lawful Board and claiming that Resolution 1-09 was improperly obtained and thus invalid. ECF No. 72-2 at 6; *see Jericho Baptist Church Ministries, Inc. v. McClam-Magruder*, No. CAL11-00873 (P.G. Cnty. Cir. Ct. Oct. 25, 2011). The Jericho DC members requested that the circuit court declare that the Board was comprised of the Jericho DC Board members and that all past Jericho MD acts were void, as well as enjoin Jericho MD members from any acting on behalf of the Church going forward. *Id.* at 6–7.

Jericho MD's members moved to strike Jericho DC's third-party complaint in *McClam-Magruder* and the parties filed cross motions for summary judgment. On October 24, 2011, disposing of both lawsuits in one Order, the Circuit Court of Prince George's County denied Jericho DC's motion for summary judgment, granted Jericho MD's motion for summary judgment, and granted Jericho MD's motion to strike Jericho DC's third-party complaint. In doing so, the Court declared Jericho MD Board members the rightful board members.

These cases were consolidated on appeal, and the Court of Special appeals *reversed* the granting of summary judgment in favor of Jericho MD, noting that "a genuine dispute of material fact exists as to whether appellant Peebles was a member of the Board." ECF No. 72-2 at 18–19. The Court also stated that it will "not resolve the issue of who is rightfully acting on behalf of Jericho Baptist Church . . . ." *Jericho Baptist Church Ministries, Inc. v. McClam-Magruder*, No. 2023, at 1 n.3 (Md. Ct. Spec. App. Sept. 19, 2014). On remand, the Circuit Court stayed the cases pending the outcome of the *George v. Jackson* appeal. Thus, neither *Peebles* nor *McClam-Macgruder* ever resulted in a final judgment.

On April 18, 2012, several members of the Church filed another complaint against Jericho MD and its members, alleging that Jericho MD's members failed to hold a statutorily required election when they formed Jericho MD. *See Chavez v. Jericho Baptist Church Ministries, Inc.* CAL12-13537 (P.G. Cnty. Cir. Ct. Apr. 18, 2012). On November 21, 2013, the defendants filed a motion for summary judgment, which was granted. The Court of Special Appeals affirmed. *See Chavez v. Jericho Baptist Church Ministries, Inc.*, No. 2604 (Md. Ct. Spec. App. Mar. 13. 2015), ECF No. 72-2 at 23–52. The appellate court narrowly focused on the issues presented to the court below, specifically whether Jericho MD was properly formed under Maryland law. It held that "the formation and incorporation of Jericho Maryland complied with

the requirements of [§§ 5-302 and 5-304 of the Corporations and Associations Article of the Maryland Code]." *Chavez*, No. 2-604 at 19; ECF No. 72-2 at 42. It also suggested that the merger between Jericho MD and Jericho DC was valid under the *assumption* that Jericho DC properly ratified the articles of merger. *Chavez*, No. 2-604 at 19; ECF No. 72-2 at 42 ("*Presumably*, the bylaws of Jericho DC or the corporate governance laws of the District of Columbia detail how the trustees of Jericho DC were elected and their ability to ratify a merger without consulting the membership of Jericho DC. *If* the trustees for Jericho DC complied with the bylaws of Jericho DC and the applicable corporate governance laws of the District of Columbia, then Appellants in some indirect way endorsed the merger of Jericho DC with and into Jericho Maryland.") (emphasis added).

The Court of Special Appeals in *Chavez* expressly declined to reach the church governance issue, stating that it will "refrain from commenting on whether the merger in the instant case complied with all requirements imposed by the laws of the District of Columbia." *Chavez*, No. 2-604 at 20 n.8; ECF No. 72-2 at 43; *George v. Jackson*, at 11 n.9. Thus, the judgment rendered in *Chavez* does not conflict with this Court's judgment.

One final case merits discussion. On February 20, 2014, church member Renee Franklin brought an action derivatively on behalf of the Church against Jericho MD members Clarence Jackson, Gloria McClam-Magruder, Denise Killen, Clifford Boswell, Dorothy Williams, and Lynda Pyles. *See Franklin v. Jackson*, No. DKC 14-0497, 2015 WL 1186599 (D. Md. Mar. 3, 2015). Franklin alleged that the members of Jericho MD seized control of the Board following the death of Betty Peebles, but did not announce their seizure to Franklin or the rest of the Church congregation. Jackson's complaint contained five derivative counts and one count alleging that the defendants violated §5-302 of the Corporations and Associations Article of the

Maryland Code. This Court granted Jericho MD's motion for summary judgment because Jackson inexcusably failed to first demand that the members with authority in the Church file a lawsuit before bringing her derivative action pursuant to Rule 23.1 of the Federal Rules of Civil Procedure. *Id.* at *13–16. The Court also found Jackson's §5-302 claim meritless because Jericho MD was properly incorporated in Maryland on December 15, 2010. *Id.* at *16–17. In *Franklin v. Jackson*, Defendants also argued that the case should be dismissed under the *Colorado River* Abstention Doctrine in part because *Peebles*, discussed *supra*, was still pending in the Maryland court system. This Court found the abstention doctrine inapplicable in part because the cases presented different issues. The Court noted that, unlike *Peebles*, "[t]he instant lawsuit does not center around membership *of the Board* of Trustees." *Id.* at *6. Thus, at no point in Franklin was the precise issue of which Board controls the Church before the Court.

Lastly, the Court does not see any procedural advantages that Defendants in this interpleader action enjoy that were not available in *George v. Jackson*. Accordingly, applying the doctrine of collateral estoppel here will not unfairly prejudice Jericho MD.

## IV.    CONCLUSION

In sum, Board control of the Church was the cornerstone of the *George v. Jackson* litigation. After a full and fair trial, the D.C. Superior Court declared Jericho DC the operative Board in control. In this interpleader action, the question of which Board controls the four BOA bank accounts thus represents a distinct subset of the larger issue that had been fully and fairly litigated at the *George v. Jackson* trial. Accordingly, Jericho DC's motion for summary judgment is granted. This Court declares that Jericho DC is entitled to the funds currently held in the Court registry. A separate order will follow.

9/9/2016 _____          _____ /S/ _____
Date                                      Paula Xinis
                                          United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| BANK OF AMERICA, N.A., | * | |
| Plaintiff, | * | Case No. PX 15-02953 |
| v. | * | |
| | * | |
| JERICHO BAPTIST CHURCH MINISTRIES, INC., et al., | * | |
| Defendants. | * | |

******

**ORDER**

For the reasons stated in the foregoing Memorandum Opinion, it is this 9th day of September, 2016, by the United States District Court for the District of Maryland, ORDERED that:

1.     The motion for summary judgment filed by Defendant JERICHO BAPTIST CHURCH MINISTRIES, INC. ("JERICHO DC") (ECF No. 68) BE, and the same hereby IS, GRANTED;

2.     Claimant, JERICHO DC, shall receive from the Clerk the funds previously deposited by order of this Court.

3.     The Clerk shall retain from the deposited funds the customary amount retained for fees and expenses.

4.     The Clerk shall transmit copies of the Memorandum Opinion and this Order to counsel for the parties.

_____/S/_____
Paula Xinis
United States District Judge