IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| BANK OF AMERICA, N.A., | * | |
| Plaintiff, | * | Case No. PX 15-02953 |
| v. | * | |
| | * | |
| JERICHO BAPTIST CHURCH MINISTRIES, INC. et al., | * | |
| Defendants. | * | |

******

**MEMORANDUM OPINION**

Pending in this interpleader action is a motion to dismiss Defendant Jericho DC's amended counterclaim filed by Plaintiff Bank of America, N.A. ECF No. 56. The issues are fully briefed and the Court now rules pursuant to Local Rule 105.6 because no hearing is necessary. For the following reasons, Bank of America's motion to dismiss is granted in part and denied in part.

## I. BACKGROUND[1]

Underlying this action is a longstanding dispute over the control and governance of Jericho Baptist Church Ministries, Inc. ("the Church"), located in Landover, Prince George's County, Maryland. The Church was incorporated in the District of Columbia in 1962 by Reverend James R. Peebles, Sr.; his wife, Betty Peebles; and Alice Harvey. Amended Counterclaim, ECF No. 48 at 2. The dispute spawned much litigation during which the parties and the courts refer to the surviving members of the original board as "Jericho DC" to distinguish it from a later-formed Board that incorporated in Maryland, also under the name

---

[1] These facts derive largely from Jericho DC's Amended Counterclaim and are accepted as true for purposes of assessing the sufficiency of its claims against Bank of America at the motion to dismiss stage.

"Jericho Baptist Church Ministries, Inc." ("Jericho MD"). Jericho MD's board members, comprised of current and former Church employees, are referred to by Jericho DC as "the Employees."

From the Church's inception, it has been governed by a Board of Trustees. The Amended Complaint alleges that as of March 2009, the Board members were Betty Peebles, Joel Peebles, William Meadows, Anne Wesley, and Dorothy Williams. *Id.* at 3. On March 15, 2009, unbeknownst to Joel Peebles, William Meadows, and Anne Wesley, the Employees, including Denise Killen, Clifford Boswell, Gloria McClam-Magruder, Clarence Jackson, and Dorothy Williams, created a document they called "Resolution 1-09 of the Board of Trustees," which purported to reflect an election of a new Board of Trustees. *Id.* The Employees claimed that Resolution 1-09 effected the resignation of William Meadows and Anne Wesley from the Church Board and the election of the Employees to the Board.

Jericho DC board member Betty Peebles died on October 12, 2010. Within days of her passing, the Employees announced that they were members of the board, and that Joel Peebles, William Meadows, and Anne Wesley were not on the board.  The Employees also seized control of the Church, its assets, and corporate records, and then formed a Maryland religious corporation under the name "Jericho Baptist Church Ministries, Inc." ("Jericho MD").

Betty Peebles' passing and Jericho MD's takeover generated a vigorous legal feud over control of the Church. Since 2010, the parties in this action, along with several individual Church members, have participated in no fewer than six separate lawsuits in federal and state court attempting to determine fully and finally which entity rightfully governs the Church and its assets. *See Jericho Baptist Church Ministries, Inc. v. Peebles*, No. CAL10-33647 (P.G. Cnty. Cir. Ct. Oct. 25, 2011), *rev'd*, No. 2023 (Md. Ct. Spec. App. Sept. 19, 2012); *Jericho Baptist*

*Church Ministries, Inc. v. Gloria McClam-Magruder*, No. CAL11-00873 (P.G. Cnty. Cir. Ct.

Oct. 25, 2011), *rev'd*, No. 1953 (Md. Ct. Spec. App. Sept. 19, 2012); *Chavez v. Jericho Baptist*

*Church Ministries, Inc.*, No. CAL12-13537 (P.G. Cnty. Cir. Ct. Feb. 18, 2014); *George v.*

*Jackson*, No. 2013 CA 007115 B (Sup. Ct. D.C. July 7, 2015), *aff'd*, 146 A.3d 405 (D.C. 2016);

*Franklin v. Jackson*, No. DKC 14-0497, 2015 WL 1186599 (D. Md. Mar. 3, 2015); *Jericho*

*Baptist Church Ministries, Inc. v. Jericho Baptist Church Ministries, Inc.*, No. APM 16-647

(D.D.C. filed Apr. 6, 2016); *Bank of America, N.A. v. Jericho Baptist Church Ministries, Inc.*,

No. PX 15-02953 (D. Md. filed Sept. 29, 2015); *Citibank, N.A. v. Jericho Baptist Church*

*Ministries, Inc.*, No. PX 15-02953 (D. Md. filed May 27, 2016).

The Church holds four corporate accounts at Bank of America, N.A. ("BOA") that it

opened between 1999 and 2002. Amended Counterclaim, ECF No. 48 at 6. Jericho DC alleges

that both BOA and the Church understood that Betty and Joel Peebles were the primary and sole

individuals authorized to act on behalf of the Church and control the Church's accounts with

BOA. *Id.* at 7. It alleges that Joel Peebles had the power to establish deposit accounts on behalf

of the Church and designate persons to operate such accounts. Joel Peebles also participated in

many of the parties' borrowing agreements over the course of their relationship.

On October 7, 2010, Jericho MD member Denise Killen signed the name of Betty

Peebles to a signature card giving Killen signature authority on the BOA accounts. *Id.* at 8. BOA

allegedly accepted the October 7th signature card via facsimile and without appropriate

documentation in violation of BOA's policies and procedures. Jericho DC also alleges that on

April 29, 2011, BOA permitted Killen to add herself and Employees Clarence Jackson and

Dorothy Williams as signatories on all Jericho accounts. *Id.*

3

Jericho DC alleges that it repeatedly notified BOA that the Employees should not be permitted to access the corporate accounts but the bank ignored these notices. Within weeks of the Employee's takeover of the Church, Joel Peebles informed a BOA executive of the dispute and the pending litigation and instructed her that the Employees should not be permitted to access the Church's corporate accounts. BOA allegedly ignored Joel Peebles' request. On April 1, 2011 Jericho DC again informed BOA by letter that the Employees had no lawful right to access the corporate accounts and gave BOA notice of the pending litigation. Again, BOA ignored this information. Jericho DC sent several more letters to BOA ordering them to prevent the Employees access to the accounts on or about April 16, 2011, September 24, 2012, April 16, 2014, and October 6, 2014. Despite Jericho DC's repeated protests, BOA continued to allow the Employees to access the Church's accounts. During this time, BOA also prevented Jericho DC from accessing the accounts. Thus, as Jericho DC puts it, BOA "took sides" in the ongoing Church governance dispute and decided to recognize the Employees as the lawful governing body of the Church. ECF No. 48 at 11.

Jericho DC further alleges that during the five years that BOA allowed the Employees to access and control Jericho's accounts, the Employees misappropriated and wasted substantial corporate assets. At the time the Employees assumed control over the Church, the BOA accounts held collectively over $10,000,000. According to BOA, these same accounts now hold $7,755,199.00. Jericho DC alleges that the contract required BOA to allow only the Church's lawful board, Jericho DC, access to the Church's accounts. BOA breached this agreement by granting the Employees access to the Church's accounts and preventing Jericho DC's access to the same.

On September 29, 2015, BOA filed the instant Interpleader action against Jericho MD, Jericho DC, and their respective board members. ECF No. 1. The Complaint, brought pursuant to 28 U.S.C. § 1335, sought an order determining which entity—Jericho DC or Jericho MD—owns and controls the assets held in four BOA corporate deposit accounts that had been established before the execution of Resolution 1-09.

On December 10, 2015 Jericho DC filed its counterclaim against BOA (ECF No. 19) and then an amended counterclaim (ECF No. 48) on February 16, 2016, asserting various causes of action related to BOA's handling of the deposit accounts in question, including breach of contract, negligence, gross negligence, and a preliminary and permanent injunction. Bank of America moved to dismiss the counterclaims under Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 56.

On May 12, 2016, Jericho DC filed a motion for summary judgment on the question of which Board possesses current control and ownership of the assets in accounts deposited with BOA. ECF No. 68. On September 9, 2016, the Court granted Jericho DC's motion for summary judgment, *see Bank of Am., N.A. v. Jericho Baptist Church Ministries, Inc.*, No. PX 15-02953, 2016 WL 4721257 (D. Md. Sept. 9, 2016), allowing it to proceed to BOA's motion to dismiss Jericho DC's amended counterclaim. For the following reasons, BOA's motion is granted in part and denied in part.

## II.    STANDARD OF REVIEW

When ruling on a motion under Rule 12(b)(6), the court must "accept the well-pled allegations of the complaint as true" and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "Even though the requirements for pleading a proper complaint are substantially

aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters*, 684 F.3d at 439 (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

III.   **ANALYSIS**

A.   **Statute of Limitations**

BOA at the outset challenges Jericho DC's claims as time-barred. As BOA correctly states, each of Jericho DC's claims are subject to a three-year statute of limitations. Md. Code Ann., Cts. & Jud. Proc. § 5-101; *Ely v. Sci. Applications Int'l Corp.*, 716 F. Supp. 2d 403, 406–07 (D. Md. 2010) (three-year statute of limitations for contract action); *Norton v. Sperling Law Office, P.C.*, 437 F. Supp. 2d 398, 401 (D. Md. 2006) ("Maryland has a three-year statute of limitations for tort suits."). Generally, a cause of action accrues, and the limitations period

begins, when the claimant knows or should have known of the breach or wrongdoing. *Poffenberger v. Risser*, 290 Md. 631, 635–36 (1981) (adopting the discovery rule in all actions). Jericho DC's harm stems from a series of allegedly unauthorized withdrawals from the Church's BOA accounts from approximately October 2010 to 2012. *See* Amended Counterclaim, ECF No. 48 at 13–14.[2] BOA argues that Jericho DC knew of these withdrawals no later than April 1, 2011 when it sent BOA a letter outlining the Church governance dispute and explaining that the Employees were not authorized to transact business with BOA on the Church's behalf. *See* ECF No. 56-1 at 17. BOA concludes that Jericho DC's claims against BOA began to accrue at that time, but it waited until well outside the limitations period to file the instant counterclaims.

Jericho DC counters that the applicable statute of limitations is subject to equitable tolling under the doctrine of adverse domination. ECF No. 60 at 25; Amended Complaint, ECF No. 48 at 15. Under this doctrine, limitations for a corporation's claims against culpable officers and directors are tolled until a disinterested majority of nonculpable directors can proceed with such claims on the corporation's behalf. *Hecht v. Resolution Trust Corp.*, 333 Md. 324, 339 (1994). Here, the board members of Jericho MD seized control of the church and its assets in October 2010 and controlled the Church until August 2015. ECF No. 60 at 26. Jericho DC resumed control of the Church as of August 10, 2015, after the Superior Court for the District of Columbia reinstated Jericho DC as the governing body. *See George v. Jackson*, Case No. 2013 CA 0071215B (filed Oct. 15, 2013). Amended Counterclaim, ECF No. 48 at 16. Thus, although Jericho DC was aware of BOA's misconduct as early as 2011 it was not in a position to file suit

---

[2] Jericho DC asserts that "[f]rom October 2010 through at least July 2015, the Bank permitted the Employees to have unfettered access to Jericho's accounts and to deposit and withdraw funds from the corporation's accounts." Amended Counterclaim, ECF No. 48 at 9. However, the amended counterclaim makes no specific reference to any transactions after 2011. *See id.* at 13–14.

on behalf of the corporation against the Bank for knowingly permitting unauthorized imbursements until it regained control in 2015. ECF No. 60 at 26.

Importantly, the Court notes that Jericho DC attempted to pursue its rights against BOA as early as 2011. Amended Complaint, ECF No. 48 at 14–15. On September 14, 2011, members of Jericho DC filed an action in this Court in the name of the Church against BOA in a case styled *Jericho Baptist Church Ministries, Inc. v. Bank of America, N.A.*, Case No. 8:11-CV-02618. While that case was pending, the Circuit Court for Prince George's County granted summary judgment in favor of Jericho MD on the Church governance issue, and deemed Jericho MD to be the proper governing body of the Church. *Jericho Baptist Church Ministries, Inc. v. Gloria McClam-Magruder*, No. CAL11-00873 (P.G. Cnty. Cir. Ct. Oct. 25, 2011), *rev'd*, No. 1953 (Md. Ct. Spec. App. Sept. 19, 2012). Because Jericho MD was the only entity that could bring claims on behalf of the Church at that time, Jericho DC voluntarily dismissed its action against BOA on January 9, 2012. ECF No. 48 at 15.

BOA submits that adverse domination does not apply to third party claims. *See* ECF No. 64 at 14; *Hecht v. Resolution Trust Corp.*, 333 Md. 324, 327 (1994) (the doctrine of adverse domination applies to "a cause of action by a corporation against *its officers and directors* as long as they remain in control of the corporation") (emphasis added). And although the court is mindful that challenges to limitations may be raised as an affirmative defense, *Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005), the defense must be supported within the four corners of the complaint. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (a 12(b)(6) motion "generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred."). "[I]n the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be

reached by a motion to dismiss filed under Rule 12(b)(6)." *Id.*  Otherwise, questions regarding adverse domination are often fact-intensive and customarily "cannot be resolved on a motion to dismiss prior to discovery." *BCCI Holdings (Luxembourg), S.A. v. Clifford*, 964 F. Supp. 468, 481 (D.D.C. 1997); *see also In re Greater Se. Cmty. Hosp. Corp. I*, 353 B.R. 324, 353 (Bankr. D.D.C. 2006) (noting that if the case were at the summary judgment stage, the facts would foreclose plaintiff's use of adverse domination rule, but the case was at the motion to dismiss stage).

At this stage, the Court is unwilling to dismiss these claims based on BOA's restrictive view of the doctrine of adverse domination. Adverse domination has indeed been applied where defendants were neither officers nor directors of the corporation and where the plaintiffs could not protect corporate interests while culpable officers and directors maintained corporate control. *See, e.g.*, *Resolution Trust Corp. v. Gardner*, 798 F. Supp. 790, 795 (D.D.C. 1992) (collecting cases); *Buchwald v. Citibank, N.A.*, No. 13-CV-210 RLW, 2013 WL 5218579, at *4 (D.D.C. Sept. 17, 2013) (discussing and distinguishing cases in which courts have applied the doctrine in suits against third parties). BOA here is alleged to have turned a blind eye to Jericho DC's repeated protestations regarding unauthorized access to the accounts, and assisted Jericho MD in wrongfully depleting funds rightfully and exclusively controlled by Jericho DC. What is more, Jericho MD had no incentive to file suit on the Church's behalf because it would have exposed its own wrongdoing. Under the facts as pleaded, BOA's limitations defense cannot be supported and so this Court must reject it.

## B.    Breach of Contract

To establish a breach of contract under Maryland law, a plaintiff must demonstrate a contractual obligation, breach, and damages. *Tucker v. Specialized Loan Servicing, LLC*, 83 F.

Supp. 3d 635, 655 (D. Md. 2015) (citing *Kumar v. Dhanda*, 198 Md. App. 337 (Md. Ct. Spec.

App. 2011)). Jericho DC's Amended Counterclaim alleges that the Church and BOA entered into

a valid and enforceable contract allowing the Church to deposit funds in certain accounts

maintained by BOA. Amended Counterclaim, ECF No. 48 at 16–17. Under the contract, BOA

was required to permit the Church, through its board members, to access its funds. *Id.* at 17.

BOA breached the contract by disbursing funds belonging to the Church to third parties, allowed

unauthorized individuals to access the bank accounts, and denied the Church access to its own

funds. The Amended Complaint sufficiently alleges that BOA breached its contractual

obligations to Jericho DC. *Id.* at 18.

BOA acknowledges that it honored checks issued by the Employees and denied members

of Jericho DC's board access to the Church's account. But BOA also counters that the operative

contract authorized its actions. ECF No. 56-1 at 9–11. Specifically, BOA contends that pursuant

to the parties' deposit agreement, BOA could grant Ms. Killen access to the accounts because her

signature card was on file.[3] ECF No. 56-3. Further, BOA argues that the same deposit agreement

permitted the transference of authority over the accounts from Jericho DC to Jericho MD. BOA

provides what it considers the controlling agreement and signature card for the Court's

consideration. *See* ECF Nos. 56-3 & 56-4.

Jericho DC vigorously disputes the documents' authenticity and challenges the propriety

of considering them at the motion to dismiss stage. ECF No. 60 at 6. Specifically, Jericho DC

points out that the deposit agreement and signature card are either unreliable or not the operative

documents governing during the time the alleged wrongdoing occurred. *Compare* Complaint,

ECF No. 1 at 1, *with* Deposit Agreement, ECF No. 56-4 at 1. *Compare also* date alleged that

---

[3] A bank signature card is a form used by banks to authenticate its customers' signatures for certain transactions.

Killen wrongfully granted herself signature authority to be October 7, 2010, ECF No. 48 at 8, *with* Signature Card, ECF No. 56-3 dated October 2009.

In general, the Court will not consider extrinsic evidence in reviewing the legal sufficiency of a complaint under Rule 12(b)(6) unless the motion is converted to one for summary judgment and provides the parties with a "reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see also Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004). *See also Pasternak & Fidis, P.C. v. Recall Total Info. Mgmt., Inc.*, 95 F. Supp. 3d 886, 894 (D. Md. 2015).  This is because "the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated [w]here plaintiff has actual notice . . . and has relied upon these documents in framing the complaint." *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (internal quotation marks and citation omitted).

In light of the above, the Court cannot and will not consider the supplemental documents. Accordingly, because the facts alleged in Jericho DC's amended counterclaim are sufficient to state a plausible claim for relief, BOA's motion is denied with respect to Jericho DC's breach of contract claim.

## C.    Negligence and Gross Negligence

Jericho DC alleges in its Amended Counterclaim that BOA maintained a duty to act in good faith and in a manner that is commercially reasonable in regard to access to the Church's accounts. BOA breached these duties by permitting the Employees access to the Church's accounts and at the same time refused to permit Jericho DC access to the same. Because of Jericho DC's repeated attempts to convince BOA to bar the Employees access to the accounts, Jericho DC concludes that BOA's conduct was deliberate and with malice. *Id.* at 11. As a result,

the Employees were able to siphon from the accounts approximately $3,000,000 in assets

belonging to Jericho DC.

　　　To prove negligence under Maryland law, a plaintiff must demonstrate that: (1) the

defendant was under a duty to protect the plaintiff from injury; (2) the defendant breached that

duty; (3) the plaintiff suffered actual injury or loss; and (4) the loss or injury proximately resulted

from the defendant's breach of the duty. *Valentine v. On Target, Inc.*, 353 Md. 544, 549 (1999).

Maryland courts have defined gross negligence as:

> [A]n intentional failure to perform a manifest duty in reckless disregard of the
> consequences as affecting the life or property of another, and also implies a
> thoughtless disregard of the consequences without the exertion of any effort to
> avoid them. Stated conversely, a wrongdoer is guilty of gross negligence or acts
> wantonly and willfully only when he inflicts injury intentionally or is so utterly
> indifferent to the rights of others that he acts as if such rights did not exist.

*Romanesk v. Rose*, 248 Md. 420, 423 (1968). *See also Liscombe v. Potomac Edison Co.*, 303

Md. 619, 634–37 (1985).

　　　The difference between negligence and gross negligence is one of degree, and thus a

question of fact. *Artis v. Cyphers*, 100 Md. App. 633, 652 (1994) ("Unless the facts are so clear

as to permit a conclusion as a matter of law, it is for the trier of fact to determine whether a

defendant's negligent conduct amounts to gross negligence."). *See also Romanesk*, 248 Md. at

424–25 (whether operation of motor vehicle under existing conditions was grossly negligent was

question for jury). *But see Boucher v. Riner*, 68 Md. App. 539, 547–48 (1986) (trial court

properly granted summary judgment in favor of defendant skydiving instructor where undisputed

facts failed to suggest wanton or reckless disregard for plaintiff's life).

　　　Jericho DC's negligence and gross negligence are rooted in the alleged longstanding

relationship between BOA and Jericho DC that vested BOA with "actual knowledge that Joel

Peebles and Betty Peebles were the primary individuals authorized to act on behalf of the Church

and the Church's accounts with the Bank." Amended Counterclaim, ECF No. 48 at 7.

Accordingly, Denise Killen's self-anointed signature authority should have caused BOA to

exercise due care and reject or inquire as to the validity of her authority.  Jericho DC further

alleges that BOA ignored the repeated admonitions of Jericho DC Board members and Joel

Peebles regarding Killen's lack of authority to act on behalf of the Church. *Id.* at 9–11. Despite

its consistent and repeated protests, BOA continued to allow the Employees full access to the

Church's accounts. All funds subsequently withdrawn are the damages flowing from BOA's

alleged lack of due care. *Id.* The facts as pleaded, therefore, sufficiently allege negligence and

gross negligence.

BOA principally counters that Jericho DC's negligence and gross negligence claims are

barred by the economic loss rule. Because "[a] contractual obligation, by itself, does not create a

tort duty," claims sounding in tort must allege a duty of care arising independent of the

contractual relationship. *Mesmer v. Md. Auto. Ins. Fund*, 353 Md. 241, 253 (1999). This rule

safeguards the "bedrock principle" that damages stemming from a contract dispute are limited to

those contemplated by the parties at the time of the creation of the contract. *City of Richmond,*

*Va. v. Madison Mgmt. Grp., Inc.*, 918 F.2d 438, 446 (4th Cir. 1990) (internal citations and

quotation marks omitted); *see also Rotorex Co. v. Kingsbury Corp.*, 42 F. Supp. 2d 563, 575 (D.

Md. 1999) (holding that when sophisticated parties enter into a commercial transaction, their

damages are limited to the ones contemplated in the contract).

To determine whether the economic loss doctrine applies, the Court considers (1) "the

nature of the harm likely to result from a failure to exercise due care" and (2) "the relationship

that exists between the parties." *Jacques v. First Nat'l Bank of Md.*, 515 A.2d 756, 759 (Md.

1986).  Indeed, courts are reluctant to "transform an ordinary contractual relationship between a

bank and its customer into a fiduciary relationship or to impose any duties on the bank not found in the [ ] agreement" absent special circumstances. *Legore v. OneWest Bank, FSB*, 898 F. Supp. 2d 912, 919 (D. Md. 2012) (quoting *Parker v. Columbia Bank*, 604 A.2d 521, 532 (Md. Ct. Spec. App. 1992)).

Moreover, courts deciding whether to impose a tort duty on a bank often refer to the parties' agreement to determine what risks the parties' contemplated at the beginning of their relationship. *See, e.g.*, *Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 569–70 (6th Cir. 2006) (affirming district court's grant of summary judgment on negligence claim. Claim was barred by the economic loss doctrine because defendant's obligations were provided in the parties Custody Agreement and Trade Letter); *Abbott v. Chem. Trust*, No. 01-2049-JWL, 2001 WL 492388, at *5 (D. Kan. Apr. 26, 2001) ("Because the custodian agreement specifically defined [the bank's] duties with respect to these matters, extra-contractual tort duties regarding these matters are precluded."); *Bank of Am., N.A. v. Hubler*, 211 S.W.3d 859, 863 (Tex. App. 2006) (after reviewing the parties' contract, holding that, because the "'assertions amount to nothing more than a complaint' regarding the Bank's failure to comply with the deposit agreement," the "claim is purely economic and 'sounds in contract alone" and is barred by the economic loss rule).

In *Jacques v. First National Bank of Maryland*, the Maryland Court of Appeals recognized an independent duty of care between a bank and its customer in the loan application process because the plaintiff was "particularly vulnerable and dependent upon the Bank's exercise of due care."  The *Jacques* court further underscored that such a special relationship arises where the "[t]he banking business is affected with the public interest." *Id.* at 763. Similarly in *Schultz v. Bank of America, N.A.*, 990 A.2d 1078 (2010), the Maryland Court of

14

Appeals determined that a bank owes a duty of ordinary care to its customers that may be enforced by its customers via an action for both breach of contract and negligence. *Id.* at 1092.[4]

Jericho DC alleges a sufficiently robust scenario where BOA actively disregarded Jericho DC's authority, and despite repeated overt warning signals, ceded account control to unauthorized individuals who depleted account assets. What is more, until discovery proceeds, it is impossible to ascertain the precise contractual relationship between the parties because the operative written contract is not before the Court.  Until the nature of the parties' relationship is more fully established, it would be premature to bar Jericho DC's tort claims under the economic loss doctrine. Accordingly, BOA's motion to dismiss as to Jericho DC's negligence claim is denied.

With regard to Jericho DC's gross negligence claim, BOA's accuses Jericho DC of alleging nothing more than "bare and unsupported legal conclusions this Court should ignore." ECF No. 56-1 at 14.  *Id.* at 15.  BOA sidesteps the particularized allegations in the Amended Complaint as to the years of Jericho DC repeatedly warning BOA that it should restrict the Employees' access to the Church accounts.  What is more, because the line of demarcation between negligence and gross negligence is one of degree and thus is inherently fact specific, the court is disinclined to dismiss the gross negligence claim before the parties have engaged in any discovery.  Accordingly, BOA's motion is denied with respect to Jericho DC's negligence and gross negligence claims.

---

[4] The *Schultz* court explained:

> There is no contradiction in allowing a party to enforce the duty of ordinary care through a contract claim, a tort claim, or both. We noted in *Jacques v. First Nat'l Bank*, 307 Md. 527, 545 (1986), that "[a]lthough the proof required and the measure of compensatory damages allowable may be essentially the same under either cause of action, there are other considerations . . . that make it desirable to provide a choice of actions."

*Id.* at 1092 n.21.

**D.      Claims for Punitive Damages and Requests for Trial by Jury**

Throughout its amended counterclaim, Jericho DC requests punitive damages and a trial by jury. BOA argues that the parties' deposit agreement "contains explicit, unambiguous, contractual language that bars claims for punitive damages and a trial by jury." ECF No. 56-1 at 17. The deposit agreement attached to BOA's motion states, "Except as limited by applicable law, we are not liable for special, incidental, exemplary, punitive or consequential losses or damages of any kind." ECF No. 56-4 at 36. It also states that both parties understand that they are "GIVING UP THE RIGHT TO A TRIAL BY JURY." *Id.* at 47 (emphasis in original).

As explained above, the Court cannot consider the deposit agreement attached to BOA's motion because Jericho DC challenges its relevance, authenticity and thus admissibility. The Court will therefore allow Jericho DC to proceed with its claims for punitive damages and its request for a jury trial.

**E.      Preliminary and Permanent Injunction**

Count IV requests that the Court grant Jericho DC unlimited access to the Church's bank accounts and enjoining BOA from allowing "any individuals who are not expressly authorized by [Jericho DC]" access to the same. Amended Counterclaim, ECF No. 48. Because, as BOA argues, the request for injunctive relief is moot in light of BOA's depositing of the accounts' funds into the Court registry, Jericho DC does not oppose BOA's request to dismiss this claim. ECF No. 60 at 26. Accordingly, BOA's motion is granted as to Count IV.

**IV.      CONCLUSION**

For the reasons stated above, BOA's motion to dismiss is denied with respect to Jericho DC's breach of contract, negligence, and gross negligence claims. BOA's motion granted with respect to Jericho DC's claim for injunctive relief. A separate order will follow.

1/17/2017 _____      _____/S/_____
Date                                                                          Paula Xinis
                                                                                    United States District Judge