IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| BANK OF AMERICA, N.A., | * | |
| Plaintiff, | * | Case No. PX 15-02953 |
| v. | * | |
| | * | |
| JERICHO BAPTIST CHURCH MINISTRIES, INC. *et al.*, | * | |
| Defendants. | * | |

******

**MEMORANDUM OPINION**

Currently pending and ripe for resolution is Bank of America ("BOA")'s renewed motion for summary judgment on all claims asserted by Jericho Baptist Church Ministries, Inc. ("Jericho D.C."). ECF No. 244. Also pending is Jericho D.C.'s Motion for Reconsideration. ECF No. 249. For the following reasons, the Court grants BOA's motion and denies Jericho D.C.'s motion.

**I.  Background**

The Court has previously set out the relevant facts, procedural posture, and appropriate standard of review in its earlier memorandum opinion addressing the propriety of summary judgment. ECF No. 201. The Court incorporates its previous opinion and will not repeat itself here. The Court's initial denal of summary judgment rested on the assumption that Jericho D.C. could offer at trial a qualified expert in commercial banking procedures to establish the standard of ordinary care in the banking industry by which the jury could measure BOA's course of conduct. ECF Nos. 201, 202. Since that ruling, BOA successfully moved to exclude Jericho

D.C.'s only proffered expert on this topic, Susan Riley. ECF Nos. 243, 251-1 at 98. In light of the Court having excluded Riley, BOA now renews its summary judgment motion.

Jericho D.C. also moves for the Court to reconsider its ruling as to Riley. Because this reconsideration motion potentially affects the outcome of BOA's summary judgment motion, the Court first addresses the propriety of reconsideration and then turns to the merits of BOA's summary judgment motion.

## II. Jericho D.C.'s Motion for Reconsideration

Jericho D.C. urges this Court to either reconsider its ruling or allow an out-of-time designation of a new expert. ECF No. 249. Both requests are unfounded.

Regarding re-designation of a new expert, Jericho D.C. has established no good cause for reopening discovery, which closed August 6, 2018. ECF. No 181. During discovery, the Court had granted multiple extensions of time and had given both parties ample opportunity to prepare their respective cases. *See, e.g.*, ECF Nos. 148, 167, 181. Jericho D.C. chose to designate Susan Riley as its sole standard-of-care expert and vigorously persisted in her bona fides. Now that BOA succeeded in excluding Riley, the Court will not allow Jericho D.C. a "do-over."

As for urging the Court to reconsider exclusion, Jericho D.C. cites not one scintilla of procedural law in support of its position. The Court begins with the Federal Rules of Civil Procedure. Rule 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities . . . may be revised at any time before the entry of a judgment adjudicating all the claims and the parties' rights and liabilities." Fed. R. Civ. P. 54(b). When assessing whether revision is proper, the Court looks to the standard for reconsideration articulated in Rules 59(e) and 60(b).

A motion for reconsideration brought under Rule 59(e) need not be granted unless the Court finds "an intervening change of controlling law, that new evidence has become available, or that there is a need to correct a clear error or prevent manifest injustice." *Robinson v. Wix Filtration Corp., LLC*, 599 F.3d 403, 411 (4th Cir. 2010). "Rule 59(e) motions may not be used, however, to raise arguments which could have been raised prior to the issuance of the judgment. . . ." *Pacific Ins. Co. v. American Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998). "[I]f a party relies on newly discovered evidence in its Rule 59(e) motion, the party must produce a legitimate justification for not presenting the evidence during the earlier proceeding. In general, reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." *Id.* (internal citations and quotation marks omitted).

Rule 60(b) sets forth broader but overlapping bases for reconsideration, none of which apply here. As with Rule 59(e), "Rule 60(b) does not authorize a motion merely for reconsideration of a legal issue." *United States v. Williams,* 674 F.2d 310, 312 (4th Cir. 1982); *see also Bank v. M/V "Mothership"*, No. ELH-18-3378, 2019 WL 2192488, at *4 (D. Md. May 20, 2019) ("Rule 60(b) was not intended as a substitute for a direct appeal from an erroneous judgment.") (citation omitted).[1]

Jericho D.C.'s motion makes no attempt to comply with the rules. Rather, the motion rests largely, if not exclusively, on the notion that this Court erred in considering "inadmissible hearsay" related to the circumstances of Riley's prior employment. ECF No. 249. However, the Court's exclusion of Riley did not depend on this challenged evidence. The Court agrees with BOA that, at best, the documents in question are relevant as to only Riley's lack of relevant

---

[1] BOA points out that this motion must be stricken as untimely. Local Rule 105.10 requires that motions for reconsideration be filed within 14 days of the entry of any applicable order. Here, Jericho D.C. waited almost three months to move for reconsideration. Clearly, the motion is untimely and thus can be stricken on this basis alone.

3

experience, not the substance of her opinions. To be sure, the Court excluded Riley based on her lack of qualifications and stands by that decision. But independently, the Court determined that Riley's opinions were unreliable and lacking in foundation and methodology. ECF No. 251-1 at 103. ("Next, and in the alternative, even if I were to find that Ms. Riley was sufficiently trained, educated and experienced, the opinions that she laid out . . . simply are not reliable"). Thus, even if somehow the Court erred in admitting the challenged documents, the decision to exclude Riley remains on solid footing. Jericho D.C. has failed to justify that reconsideration is warranted. The motion is denied.

### III. BOA's Renewed Motion for Summary Judgment

BOA contends that summary judgment on all claims is warranted because without an expert to opine on the relevant industry standard of care and BOA's breach of the same, no reasonable juror could find in favor of Jericho D.C. The Court agrees.

To prevail on either its implied contractual duty or negligence claims[2] at trial, Jericho D.C. bears the burden of demonstrating that BOA breached its duty of ordinary care owed to Jericho D.C. by continuing to disburse bank account funds as directed by Jericho M.D. and its representative Denise Killen. ECF No. 192 at 18; *see also Gillen v. Md. Nat'l Bank*, 274 Md. 96, 102–03 (1975). The duty of ordinary care in this context means the "reasonable commercial standards which prevail in the area in which the Bank is located, with respect to banking." *Schultz v. Bank of Am., N.A.*, 413 Md. 15, 40 (2010) (citing Md. Code, Com. Law § 3-103(a)(7)). BOA maintains that Jericho D.C. must submit expert testimony to establish the relevant industry

---

[2] As to Jericho D.C.'s negligence claim, the question for the trier of fact is the same as for the implied contractual duty claim. *Schultz*, 413 Md. at 28 ("A bank customer may bring a negligence suit against a bank for a violation of this duty of ordinary care."); *see also Taylor v. Equitable Tr. Co.*, 269 Md. 149, 155–56 (1973).

4

standards as well as how BOA breached those standards, which it cannot do now that Riley's opinions have been stricken.

In response, Jericho D.C. advances two arguments for why summary judgment is unwarranted. First, Jericho D.C. argues that because the 2009 BOA account records that reflect Denise Killen as an authorized account signatory are "unauthenticated" business records, the Court must not consider them. Without such documents, says Jericho D.C., no evidence supports that BOA maintained any authority to disburse funds at Killen's direction. Second, and alternatively, Jericho D.C. contends that because BOA's standard-of-care violations were so patent, this case is not one in which expert testimony is necessary. The Court addresses each argument in turn.

### A. The 2009 Bank Records are Properly Considered at Summary Judgment

As to the 2009 bank records, BOA rightly points out that Jericho D.C. relies exclusively on authority which pre-dates the current applicable Federal Rules of Civil Procedure as amended in 2010. ECF No. 247 at 10–11. The operative version of Rule 54(b) provides that at the summary judgment stage, the Court may consider documents which have not yet been properly authenticated, subject to the non-moving party's objection. *See* Fed. R. Civ. P. 54(b), (c). If the non-movant objects on authenticity grounds, the Court must determine whether the moving party *can* produce authenticated documents at trial. *Id. See also Sall v. Wells Fargo Bank, N.A.*, No. DKC 10-2245, 2012 WL 5463027, at *1 n.1 (D. Md. Nov. 7, 2012); *Ridgell v. Astrue*, No. DKC 10-3280, 2012 WL 707008, at *9 (D. Md. Mar. 2, 2012) ("the 2010 amendments to Rule 56 changed the procedure for submitting materials on summary judgment. The new rule eliminated the 'unequivocal requirement that documents submitted in support of a summary judgment motion must be authenticated.'").

Here, BOA has submitted record evidence that it can and would authenticate the documents in question at trial. *See* ECF No. 248 at 6 n.2. The 2009 records bear the mark of BOA's electronic document management system, ImageView, which is the repository for account documents. Jericho D.C. does not contest that BOA could call a records custodian at trial to testify as to BOA's document retention policy and thus authenticate the documents without difficulty. *Id.* Finally, BOA's 30(b)(6) witness testified at deposition that the documents were kept in the ordinary course of BOA's business. ECF No. 188-8 at 291, 319, 321. On this record, nothing before the Court suggests that BOA "*cannot* provide authenticated versions of their exhibits." *Sall,* at *1 n.1 (emphasis in original). Jericho D.C., therefore, has failed to convince the Court that, pursuant to Rule 56(c), it must disregard the 2009 documents. The Court will consider them as part of the record evidence.[3]

### B. Banking Industry Standard of Care Testimony is Necessary to Jericho D.C.'s Case

This leaves the question of whether Jericho D.C. can, without expert testimony, sustain its burden of demonstrating that BOA's reliance on Killen's authority to honor requested disbursements from the church bank accounts violated the applicable industry standard of care. As previously discussed, ECF No. 201 at 13, the Court is guided principally by *Schultz*, in which the Maryland Court of Appeals analyzed whether expert testimony concerning the standard of care is necessary to sustain a banking negligence case involving alleged unauthorized account disbursements. 413 Md. at 19. There, the plaintiff, the personal representative of the deceased account holder, contended that the bank breached its duty of due care when it added a signatory to the bank account and allowed that signatory to negotiate withdrawals on her own behalf. *Id.*

---

[3] The Court finds similarly unavailing Jericho D.C.'s argument that the documents constitute "inadmissible hearsay."

at 21.  The plaintiff did not offer any expert testimony on the professional standards applicable to banking officers when adding signatories to a checking account.  Instead, the plaintiff relied on evidence demonstrating that the signature card adding the signatory had been forged and other irregularities from which the jury could infer the bank negligently disbursed the funds in question.  *Id.* at 34.

The court, in reversing the jury's award in favor of plaintiff, held that expert testimony was indeed required for the plaintiff to sustain his burden at trial.  In reasoning that the standards applicable to a bank in authorizing account signatories is beyond the ken of the average layperson, the court explained,

> [W]e cannot say with any certainty that most people have added someone's name to their bank accounts. Petitioner supports this contention by asserting that '[l]ay people are frequently called upon in today's society to prove their identifications.' We disagree that these experiences provide a sufficient basis to conclude what the trier of fact would know because such experiences may vary widely from the reasonable standards in the banking industry.  Furthermore, the relevant activity in this case was by the bank itself, not a bank customer.  Even if most people have added a name to their bank accounts, most people have certainly not acted as a bank officer adding a name to a customer's bank account. That process may occur behind closed doors, out of the sight of the customer, and may involve numerous unknown procedures. To explain this process, a plaintiff must produce expert testimony from someone familiar with the process from a bank's perspective. Petitioner also failed to provide evidence of the reasonable commercial banking standards that prevail specifically in the relevant geographical area of the Bank, as required by the ordinary care standard.  Finally, banking practices are changing in the era of the Internet and other electronic banking practices.  Bank procedures may not be the same today as they were just a few years ago, which also means that an expert may be necessary to explain to the trier of fact what duty a bank owes to a customer.

*Id.* at 34–35.

Accordingly, the *Schultz* Court concluded that the trial court erred in submitting the case to the jury absent expert testimony as to the pertinent standards of care and the bank's violation of the same.  *Id.* at 35.

In this respect, *Schultz* is on all fours with this case.  As did the plaintiff in *Schultz*, Jericho D.C. contends that BOA violated its duty of due care when adding Denise Killen as a

7

signatory on the church bank accounts and thereafter allowing her to authorize disbursement of account funds. Jericho D.C. further contends that BOA breached similar duties in refusing to honor Joel Peebles' request to deny Killen such authority. When viewed most favorably to Jericho D.C., the Court cannot discern how a trier of fact would be able to ascertain the proper standards of care applicable to BOA officers and, without the benefit of expert testimony, whether such officers fell below such standards. For this reason, as in *Schultz*, the case simply cannot reach the jury.

Jericho D.C. rightly contends that the *Schultz* Court recognized such expert testimony is not required where "the alleged negligence, if proven, would be so obviously shown that the trier of fact could recognize it without expert testimony." *Schultz*, 413 Md. at 29. By way of illustration, the *Schultz* Court noted that expert testimony is unnecessary where the bank's acts and omissions are as obviously negligent as "where a dentist extracts the wrong tooth, a doctor amputates the wrong leg or leaves a sponge in a patient's body, or an attorney fails to inform his client that he has terminated the representation of his client." *Id.* at 30. In such rare situations, the breach in the relevant standard of care need no further expert elaboration.

That is not this case. In trying to convince the Court otherwise, Jericho D.C. points to two Maryland Court of Special Appeals cases, each of which were discussed in *Schultz*. ECF No. 249 at 22; *Schultz*, 413 Md. at 29–30. As the *Schultz* Court emphasized, *Saxon v. Harrison*, 186 Md. App. 228 (2009) involved a bank's disbursing funds on a check that had been indorsed with only part of the payee's name. The other case, *Free State Bank & Trust v. Ellis*, 45 Md. App. 159 (1980) concerned a bank's release of collateral without authority. *Schultz* was careful to distinguish such patent transgressions from the more complex question of when a bank may

honor the directives of additional or alternative signatories on a bank account. 413 Md. at 30–31. Thus, as in *Schultz*, neither *Saxon* or *Ellis* advance this Court's analysis.

Jericho next attempts to distinguish the facts of *Schultz* from this case. If anything, such attempts highlight that perhaps expert testimony is as critical here, if not more, than in *Schultz*. Jericho D.C. ably demonstrates that which neither party disputes—a war for church control had been waging between Jericho D.C. and Jericho M.D. for years. During this time, courts of law disagreed over which faction controlled the church and, by extension, church bank accounts. BOA honored the most recent, operative bank records which conferred on Killen authority to direct the disbursement of bank funds, albeit over Joel Peebles' protestations. Thus, the ultimate trial question for which Jericho D.C. bears the burden of proof is whether BOA's acceptance of and honoring Killen as an authorized signatory on the church bank accounts violated bank industry standards of care.

But without an expert, Jericho D.C. can marshal *no evidence* as to the standards of care applicable to BOA and the highly regulated industry of commercial banking, or as to how BOA breached such standards. Accordingly, without the benefit of expert testimony and viewing the remaining evidence most favorably to Jericho D.C., no reasonable trier of fact could conclude that BOA's conduct breached the relevant industry standard of care. Because such proof is necessary to sustain either the breach of implied contractual duty or the companion negligence claims, the Court is constrained to grant summary judgment in BOA's favor as to all remaining counts.

## IV. Conclusion

For the foregoing reasons, Bank of America, N.A.'s motion for summary judgment is granted and Jericho Baptist Church Ministries, Inc.'s motion for reconsideration is denied.

A separate Order follows.


1/10/2020_____ \_\_\_/S/_____
Date Paula Xinis
United States District Judge